UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BERNARD HOWARD,

Plaintiff,

v.

Case No. 25-cv-13517
HON. MARK A. GOLDSMITH

DALE COLLINS, et al.,

Defendants.
_______________________________/

**OPINION & ORDER**
**DENYING DEFENDANTS' MOTION TO DISMISS (Dkt. 28)**

Plaintiff Bernard Howard alleges that Defendants Detroit Police Department (DPD) employees Dale Collins, Steven Myles, and William Rice committed Brady[1] violations against him by withholding exculpatory evidence from the prosecutor during his state criminal proceedings. Before the Court is Defendants' motion to dismiss (Dkt. 28).[2] For the reasons that follow, the Court denies Defendants' motion.[3]

## I. BACKGROUND

Bernard Howard was convicted in 1995 of three counts of felony murder, three counts of armed robbery, and one count of felony firearm arising from a July 1994 triple homicide in Detroit. Am. Compl. ¶ 35 (Dkt. 26). He received three life sentences without parole. Id. ¶ 36. In 2020, the Wayne County Conviction Integrity Unit investigated Howard's case. In December 2020, the

[1] Brady v. Maryland, 373 U.S. 83 (1963).

[2] There are also four separate counts against Defendant Monica Childs, but they are not addressed in Defendants' motion.

[3] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to the motion, the briefing includes Howard's response (Dkt. 30) and Defendants' reply (Dkt. 33).

trial court dismissed Howard's convictions pursuant to a stipulated order between the Wayne County Prosecutor's Office and Howard's defense counsel. Id. ¶¶ 45–47.

Howard filed his initial civil rights complaint in 2021, alleging constitutional violations by DPD homicide detectives and a sergeant. Howard v. Collins (Howard I), No. 21-CV-12036, 2024 WL 5398545, at *3 (E.D. Mich. Jan. 25, 2024). His claims included allegations that Defendants Collins, Rice, and Myles violated Brady by failing to disclose that witness Joe Twilley was part of a DPD jailhouse informant program. Id. Twilley testified at Howard's preliminary examination and criminal trial that Howard's co-defendants had confessed their involvement in the murders and implicated Howard. Id.

Following extensive discovery, Defendants moved for summary judgment in Howard I. Mot. for MSJ (Dkt. 68) (Howard I). On January 25, 2024, the Court granted summary judgment on certain fabrication claims but denied it as to the Brady claim regarding the alleged jailhouse informant program. 1/25/24 Op. & Order (Dkt. 96) (Howard I). The Court found Howard raised a genuine issue of material fact whether Collins, Rice, and Myles "were aware of or participated in a practice of providing benefits or preferential treatment to inmates in exchange for false or fabricated testimony in pending criminal cases." Id. at PageID.4940.

In July 2025, the parties stipulated to voluntary dismissal with leave to refile the remaining claims. The stipulated order expressly provided that if Howard refiled, "the parties shall be bound by all rulings and orders from this case" and defined the "Remaining Claims" as the Brady violation regarding the benefit-for-testimony program. 7/23/25 Stipulated Order at PageID.5021 (Dkt.120) (Howard I). Howard refiled the instant case in November 2025 (Howard II) and filed a Second Amended Complaint on February 11, 2026. See Am. Compl. (Dkt. 26).

The Second Amended Complaint alleges that Defendants intentionally and deliberately failed to disclose to the trial prosecutor: (i) that Twilley had been used as a listening post for homicide detectives in more than twenty previous cases, and (ii) that the DPD Homicide Section had used jailhouse informants as listening posts for years to help secure convictions. Am. Compl. ¶ 53. Howard further alleges that this evidence was material, exculpatory, and impeaching, and that Defendants' failure to disclose it resulted in Howard's wrongful conviction. Id. ¶ 54.

Defendants now move to dismiss under Rule 12(b)(6), arguing the Second Amended Complaint conflicts with prior rulings, fails to adequately plead a Brady violation, and improperly seeks individual liability based on systemic DPD policies.

## II. ANALYSIS [4]

### A. Fed. R. Civ. P. 12(d)

Defendants rely on documents outside the Second Amended Complaint, including preliminary examination transcripts, trial testimony, hearing transcripts, and internal prosecutor memoranda from Howard I. Defendants argue that these materials are properly considered either as public records subject to judicial notice or as documents incorporated by reference in the Second Amended Complaint. Mot. at PageID.199. Howard contends that reliance on these materials requires converting the motion to dismiss to a summary judgment motion under Rule 12(d). Resp. at PageID.277.

[4] To survive a motion to dismiss, a plaintiff must allege "facts that state a claim to relief that is plausible on its face and that, if accepted as true, are sufficient to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The Court is required to "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007). The defendant has the burden of showing that the plaintiff has failed to state a claim for relief. Id.

The Court may properly consider these materials without conversion. First, many of the documents are matters of public record from Howard's underlying criminal proceedings. Courts may take judicial notice of some documents of public record, including other court proceedings, at the motion-to-dismiss stage. Levine v. Liveris, 216 F. Supp. 3d 794, 805 (E.D. Mich. 2016). Second, the Second Amended Complaint repeatedly references Twilley's statements, testimony, and the circumstances of his cooperation with police. The complaint alleges Howard was arrested, detained, and convicted "based on" Twilley's allegedly fabricated statements and that the Brady claim rests on Twilley's participation in the jailhouse informant program supported by testimony at his resentencing hearing.

Documents "that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." Id. The Sixth Circuit has held that incorporating such documents is proper; "[o]therwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." Weiner v. Klais & Co., 108 F.3d 86, 89 (6th Cir. 1997). Here, Twilley's testimony and statements are central to Howard's Brady claim—the entire theory depends on what was disclosed or not disclosed about Twilley's role as an informant.

Moreover, the parties' stipulated order expressly states that the current case is "a continuation" of Howard I and that "the parties shall be bound by all rulings and orders from this case." Stipulated Order at PageID.5021 (Howard I). This continuation creates a non-traditional procedural posture where the evidentiary record from the prior case remains part of the proceeding. Conversion is not required where parties have had a full opportunity to develop the factual record through discovery, and the stipulated order contemplates reliance on that record.

**B. Compliance with Prior Rulings**

Defendants argue the Second Amended Complaint conflicts with the Court's January 2024 summary judgment ruling and the July 2025 stipulated order in Howard I by alleging claims beyond the narrow Brady theory that survived summary judgment. Mot. at PageID.202–204. Specifically, Defendants contend paragraph 53(a)—alleging failure to disclose that Twilley "had been used as a listening post for homicide detectives in more than twenty previous cases"—impermissibly expands the claim into territory already foreclosed. Id. at PageID.203.

This argument fails. The Court's summary judgment order permitted Howard to proceed on the claim that Defendants "were aware of or participated in a practice of providing benefits or preferential treatment to inmates in exchange for false or fabricated testimony in pending criminal cases." 1/25/24 Op & Order at PageID.4940 (Howard I). The stipulated order adopted this exact formulation as the "Remaining Claims." Stipulated Order at PageID.5021 (Howard I). The Second Amended Complaint alleges precisely this theory: that Defendants failed to disclose "that the DPD Homicide Section had used jailhouse informants 'snitch witnesses' as listening posts for years to help secure convictions" and that this program involved providing benefits to informants. Am. Compl. ¶ 53. Paragraph 53(a) does not state a separate claim; it provides factual support for the systemic-program allegation. The fact that Twilley had testified in over twenty cases is probative of the existence and scope of the alleged informant program. It demonstrates that Twilley was not a one-time cooperator but a repeat participant in a structured practice—exactly the type of evidence relevant to whether a "practice of providing benefits" existed. Reading paragraph 53(a) as "illustrative" rather than as a separate standalone claim is consistent with the Court's prior order.

Defendants further argue the Second Amended Complaint fails to allege that Twilley received benefits in exchange for his testimony at Howard's trial because Twilley had already been released from custody by that time. Mot. at PageID.204. But this argument misconstrues the Brady claim. The claim is not that Twilley received a benefit for testifying in Howard's specific case. Rather, it is that Defendants failed to disclose the existence of a broader program in which informants like Twilley received benefits for cooperating—a fact material to assessing Twilley's credibility and motivation. Whether Twilley was in custody at the time of trial affects the weight of the evidence, not the plausibility of the claim at the pleading stage.

**C. Brady Claim**

**1. Availability of the Information**

Defendants' core substantive argument is that the alleged Brady material—information about Twilley's role in a DPD informant program—was not suppressed because defense counsel had actual or constructive knowledge of it. Mot. at PageID.204–211. Defendants point to preliminary examination testimony, Walker hearing colloquy, and trial cross-examination showing defense attorneys questioned Twilley about being a "snitch," his cooperation in prior cases, and his sentence reduction. At the motion-to-dismiss stage, however, this argument asks the Court to resolve disputed factual inferences in Defendants' favor—precisely what Rule 12(b)(6) forbids.

Brady's suppression element is defeated when "the defendant knew or should have known the essential facts permitting him to take advantage of the information in question, or if the information was available to him from another source." United States v. Graham, 484 F.3d 413, 417 (6th Cir. 2007). Evidence is not suppressed if the defendant is "aware of the essential facts that would enable him to take advantage of the exculpatory evidence." Spirko v. Mitchell, 368

F.3d 603, 610 (6th Cir. 2004). However, whether defense counsel had sufficient knowledge to negate suppression is a fact-intensive inquiry unsuitable for resolution on the pleadings.

Here, the Second Amended Complaint alleges that Defendants failed to disclose the existence and scope of a systemic DPD program providing benefits to jailhouse informants in exchange for testimony. Am. Compl. ¶ 53. The fact that defense counsel asked Twilley whether he was a "snitch" or had testified in other cases does not establish, as a matter of law, that counsel knew of the specific program Defendants allegedly concealed. Moreover, the question is not whether defense counsel could have uncovered the information through diligent investigation, but whether Defendants suppressed it by failing to disclose it to prosecutors. Recent Sixth Circuit authority holds that police officers have a duty to disclose exculpatory evidence to the prosecutor handling the case, not merely to ensure it exists somewhere in the prosecutor's office. Salter v. City of Detroit, 133 F.4th 527, 536 (6th Cir. 2025). The Second Amended Complaint alleges that Defendants knew of the program and failed to inform the trial prosecutor of the extent of the program—a plausible suppression theory at the pleading stage.

Additionally, the incorporated transcripts show that while defense attorneys asked questions about Twilley's cooperation, they did not have access to the full scope of his involvement or the details of the alleged benefit program. Simply because Twilley's cross-examination touched on the topic of being a jailhouse informant does not establish that all material impeachment evidence was disclosed. Whether the essential facts were available requires evaluating what specific information Defendants possessed, what they disclosed, and what remained concealed—are questions of fact inappropriate for resolution under Rule 12(b)(6).

**2. Exculpatory Value**

Defendants argue the Second Amended Complaint fails to plausibly allege that the withheld information was "obviously exculpatory" such that Defendants had a duty to disclose it. Mot. at PageID.211–215. Defendants contend that using jailhouse informants is constitutionally permissible and that the mere existence of such a practice, absent fabrication by Defendants, does not constitute Brady material. Id.

This argument conflates the constitutional permissibility of using informants with the Brady duty to disclose material impeachment evidence. While Kuhlmann v. Wilson, 477 U.S. 436, 456 (1986), permits the use of jailhouse informants as listening posts, that does not mean information about incentives, benefits, or a pattern of informant testimony is immaterial to the defense. Evidence about a witness's motivation to lie—including benefits received for cooperation—is classic Brady impeachment material. See Thomas v. Westbrooks, 849 F.3d 659, 664 (6th Cir. 2017) (finding a Brady violation when the prosecution did not disclose that the witness received $750 before trial).

The Sixth Circuit recognizes that police officers must disclose evidence whose exculpatory value is "apparent"—that is, evidence that "could form a basis for exonerating the defendant." D'Ambrosio v. Marino, 747 F.3d 378, 390 (6th Cir. 2014). Whether evidence has apparent exculpatory value depends on "the state of the case at the time." Id. Here, the Second Amended Complaint alleges Twilley was a key prosecution witness whose testimony directly implicated Howard. Information that Twilley participated in a program providing benefits for testimony would undermine his credibility and could have altered the trial outcome—making its exculpatory value apparent.

Defendants emphasize that the Court previously dismissed fabrication claims and that Twilley was not in custody when he testified at trial. These facts are relevant to the weight and credibility of the evidence, but they do not render the suppression claim implausible as a matter of pleading. The question is whether a reasonable jury could find that information about the informant program was material to the defense. Taking the Second Amended Complaint's allegations as true—as the Court must—the answer is yes.

The materiality analysis under Brady requires evaluating the withheld evidence "collectively, not item by item." Kyles v. Whitley, 514 U.S. 419, 436 (1995). The cumulative effect of knowing that Twilley was a serial informant who testified in over twenty cases, participated in a benefit program, and had his sentence reduced could have significantly impeached his credibility. Whether that impeachment evidence would have created a reasonable probability of a different outcome is a fact question that cannot be resolved on a motion to dismiss.

**3. Individual Liability**

Defendants argue that Howard's claim improperly seeks to impose individual liability based on a DPD-wide policy, effectively pleading a claim under Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691(1978) against individual defendants. Mot. at PageID.215–217. Howard responds that he asserts no municipal liability claim and that references to the "systemic program" are merely evidence of Defendants' knowledge and the materiality of the withheld evidence. Resp. at PageID.286.

Howard's theory is cognizable as an individual-capacity Brady claim. The allegation is not that Defendants are liable simply because a DPD policy existed, but that they personally knew of the policy, knew Twilley was a participant, and failed to disclose that information to prosecutors in Howard's case. This states a claim for individual liability based on the Defendants' own

conduct—the failure to disclose—even if the underlying misconduct (the informant program) was systemic.

A plaintiff asserting a § 1983 claim "must plead that each Government-official defendant, through [his] own individual actions, has violated the constitution." Iqbal, 556 U.S. at 676. Here, the Second Amended Complaint alleges Defendants Collins, Rice, and Myles each "intentionally and deliberately failed to disclose" the Brady material. Am. Compl. ¶ 53. While the complaint could be more specific about each Defendant's individual role, it alleges conduct by each Defendant sufficient to state a claim at the pleading stage. The Second Amended Complaint does not seek to hold Defendants liable solely for the existence of a policy; it alleges they failed in their individual duty to disclose exculpatory information they personally possessed.

Whether this theory ultimately succeeds will depend on proof that each Defendant had the requisite knowledge and failed to act. Facial plausibility does not require detailed factual allegations about each defendant's state of mind, but only enough to raise a reasonable expectation that discovery will reveal such evidence. Twombly, 550 U.S. at 556. The Second Amended Complaint meets that standard.[5]

## III. CONCLUSION

For the reasons explained above, the Court denies Defendants' motion to dismiss (Dkt. 28).

**SO ORDERED.**

Dated: September 24, 2026
Detroit, Michigan

s/Mark A. Goldsmith
MARK A. GOLDSMITH
United States District Judge

[5] Because the Court finds that Howard has sufficiently pled a Brady claim at the pleading stage, the Court need not address Howard's arguments regarding waiver or law-of-the-case.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 24, 2026.

s/Joseph Heacox
JOSEPH HEACOX
Case Manager